```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

UNITED STATES OF AMERICA,    )
                             )
     v.                      )
                             )  1:05cr391
BRIAN ODELL BAILEY,          )
                             )
ANTHONY RAY NEWMAN,          )
                             )
     Defendants.             )
```

MEMORANDUM OPINION

Pending before the Court are defendant Bailey and defendant Newman's Motions to Suppress.

Defendants Bailey and Newman were arrested on January 21, 2005, after Manassas City police officers searched their apartment and discovered contraband therein.  The defendants seek to have the evidence suppressed, arguing that the officers violated their Fourth Amendment right to be free from unreasonable searches and seizures.  In particular, the defendants argue that they had a reasonable expectation of privacy in the common areas of their apartment building, that exigent circumstances did not exist to justify the officers' warantless entry into their apartment, and that their later consent to a thorough search of the apartment was involuntary. Defendant Bailey also moves to suppress certain statements.  An evidentiary hearing on the motions was held on October 24, 2005.

I. Entry into the Apartment Building

    The defendants first argue that the police violated their Fourth Amendment right to be free from unreasonable searches and seizures by entering their apartment building.  The Court finds that the defendants' argument is not supported by reliable legal authority and by the facts.  The defendants rely on U.S. v. Carriger, 541 F.2d 545, 551 (6th Cir. 1976), in which the Sixth Circuit held that a tenant in an apartment building had a reasonable expectation of privacy in the hallways of his apartment building.  The front and back doors of the apartment building in Carringer were locked and required a key to enter, or that a resident "buzz" the person in.  The police officer in that case entered the building without buzzing when some workmen left the building.  Although the Fourth Circuit has not addressed the Carringer decision, a number of other circuit courts have rejected it.  See U.S. v. Nohara, 3 F.3d 1239, 1241 (9th Cir. 1993); U.S. v. Holland, 755 F.2d 253, 255-56 (2d Cir. 1985); United States v. Acosta, 965 F.2d 1248 (3rd Cir. 1992).  Moreover, Officer Miller testified at the suppression hearing that the doors to the defendants' apartment building were not locked and that any member of the public could enter without a key or being accompanied by a resident.  Defendants offered no evidence to contradict that testimony.  Therefore, this Court holds that defendants Bailey and Newman had no reasonable

expectation of privacy in the common areas of their apartment building, and the police officers' entry into the building did not violate the defendants' Fourth Amendment rights.

II. Entry into the Apartment

At the suppression hearing, Officer Miller testified that on January 21, 2005, he saw Warren Johnson, for whom he confirmed there was an outstanding arrest warrant based on drug charges, walk with another man, later identified as Willie Corum, into the defendants' apartment building. Officer Miller was in his car when he saw Johnson. After confirming that Johnson was indeed wanted, Miller turned his car around. When Officer Miller arrived back at the apartment building, Corum had left the building. Miller stopped Corum, and noted a smell of marijuana emanating from Corum's car. He asked Corum where Johnson was, and Corum replied that Johnson was "probably upstairs."

At this point, Officer Lee, a second Manassas City police officer, arrived at the scene. He joined Officer Miller in entering the unlocked apartment building. Miller testified that Lee opined that Johnson was in apartment six, which was on the top floor of the building. Nothing in the record explains the basis for Lee's belief. In addition to Lee's statement, Officer Miller relied on a strong odor of fresh marijuana upon entering the building, and the observation that the odor intensified as he walked up the stairs and approached apartment six. Officer

Miller further testified that he paused before knocking at the door. After hearing muffled sounds of activity inside, he knocked on the door. After a longer than normal period of time, according to Miller, defendant Bailey answered the door, with defendant Newman a few feet behind him. Officer Miller testified that the smell of fresh marijuana again intensified when the door was opened. Miller testified that in response to his question about whether anyone else was in the apartment, Bailey and Newman denied that anyone else was in the apartment. However, a third man, later identified as former defendant Pearson, appeared, startling Miller, and causing him to enter the apartment for officer safety.

    Some of Miller's testimony was contradicted and some confirmed by the second government witness, Officer Rhodes, who testified that he arrived at the defendants' apartment after the door was open but while Officer Miller was talking with the defendants and before Miller had actually crossed the threshold. Like Miller, Rhodes testified that he began to smell marijuana half-way up the stairs on his way to the defendants' apartment. When he arrived at the door to the apartment he was positioned behind Officer Miller to Miller's right. Rhodes stated that given the strong smell of marijuana, he tapped Miller on the shoulder and told him that they should enter the apartment because the smell of marijuana indicated the obvious presence of

contraband within.  Unlike Miller, Rhodes testified that Pearson did not appear until after the police, who were in full uniform, had entered the defendants' apartment.

Officer Miller's testimony was also somewhat impugned by the defendants because of prior disciplinary problems involving searches, as well as inconsistencies between Officer Miller's testimony at the suppression hearing and his earlier statements both at the defendants' Preliminary/Detention Hearing and in his written reports of the incident.  However, despite these many inconsistencies, several facts were unequivocally established, including the fact that both officers smelled a strong odor of marijuana coming from the apartment.  Although the Court does not accept Officer Miller's statements that he saw a third person appear and therefore had to enter the apartment for officer safety, the Court finds, based on Fourth Circuit case law, that exigent circumstances existed to enter the apartment, namely, preventing the destruction of evidence.

The Fourth Circuit has held that officers may enter and search a home without a warrant when they have probable cause to believe that contraband is present and a reasonable belief that the evidence may be destroyed or removed before they can secure a search warrant.  <u>United States v. Turner</u>, 650 F.2d 526, 528 (4th Cir. 1981).  In <u>United States v. Grissett</u>, the court held that "[t]he police need not, as appellants suggest, produce concrete

5

proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe." 925 F.2d 776, 778 (4th Cir. 1991)(per curiam).  The court went on to note that "[s]ince the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a warrant.  This is especially true in the case of an easily disposable substance like drugs."  <u>Id.</u>

In this case, the evidence at the suppression hearing established that the police officers were looking for a wanted individual, Warren Johnson.  In investigating his whereabouts the officers spoke to Willie Corum, who had just been with Mr. Johnson and smelled of marijuana.  Corum told them that Johnson was probably upstairs.  Officer Miller reasonably took "upstairs" to mean upstairs in the building that he had seen Johnson and Corum enter together.  Upon entering the building, the officers smelled marijuana.  The smell intensified as they approached apartment six.  Having seen Johnson with Corum, smelled marijuana on Corum, and smelled marijuana coming from apartment six, it was not unreasonable for the officers to suspect that Johnson would be found in apartment six.

The Fourth Amendment does not prohibit a police officer from

knocking on a person's door.  Once the door was opened, the officers had further evidence, based on their sense of smell, that contraband existed within the apartment.  In addition, once the door was opened, the defendants knew that police officers were at their apartment.  Lastly, the officers did not see Johnson when the door was opened.  Since they had identified themselves as police officers, the officers could reasonably fear that the defendants would dispose of the contraband before a warrant could be obtained.  See Grissett, 925 F.2d at 778.

The defendants argue in response that the police created any exigent circumstances that may have existed by identifying themselves to the defendants, thereby necessitating the warrantless search.  The defendants point to United States v. Chambers, 395 F.3d 563 (6th Cir. 2005), in which the Sixth Circuit applied and interpreted the Supreme Court's decision in McDonald v. United states, 335 U.S. 451 (1948), to uphold the suppression of evidence obtained during a search, reasoning that, "for a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves." 395 F.3d at 566.  The Sixth Circuit explicitly faulted the police for going to the residence purportedly to conduct a "knock and talk" aimed at obtaining consent to search the residence when in fact the police clearly had probable cause sufficient to obtain a warrant before

7

setting out for the home. This evidence included information provided by a known, named, informant and evidence gathered during three nights of surveillance and helicopter flyovers of the location. Id. at 565-69.

The situation in Chambers is easily distinguished from the circumstances surrounding the search in this case. Unlike the officers in Chambers, the officers in the case at bar had not conducted lengthy surveillance of the premises. They were alerted to the premises that day, in the course of their search for a suspect wanted on drug charges. The defendants argue that since the officers smelled the odor of marijuana before they knocked on the defendants' door, they should have stopped and waited until they could obtain a search warrant for the apartment. This argument is unpersuasive. In Chambers and the cases cited therein, extensive investigation was conducted over multiple days or months and the officers' decision to knock on the door without a warrant appeared inexplicable and was therefore interpreted as evidence suggesting an intention to evade the warrant requirement. See Chambers, 395 F.3d at 565 ("Our review concluded that the created-exigency cases have typically required *some showing* of deliberate conduct on the part of the police evincing an effort intentionally to evade the warrant requirement.") (citation omitted)(emphasis in original).

In this case, the officers were conducting a reasonable field investigation, and their failure to stop half-way down the hallway and obtain a warrant before knocking on the defendants' door cannot serve as the basis for the defendants' Fourth Amendment claims.

For these reasons, the Court finds that exigent circumstances existed sufficient to justify the officers' warrantless entry into the defendants' apartment and no Fourth Amendment violation occurred.

III. Consent to Search

Finally, defendants argue that their consent to a full search of the apartment was involuntary. The Fourth Circuit has directed that, "[i]n determining whether consent to search was freely and voluntarily given, the totality of the circumstances surrounding the consent must be examined....In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). In addition, "[w]ritten consent supports a finding that the consent was

voluntary," United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001) (citing United States v. Navarro, 90 F.3d 1245, 1257 (7th Cir. 1996)).

Although the government did not present evidence as to characteristics of the defendants, Officer Miller testified that the defendants were initially handcuffed with their hands behind their backs, but that the cuffs were changed to the more comfortable front position before the consents to search were obtained. Moreover, only a half hour elapsed between the officers' entry into the apartment at about 5:30 p.m. and the time the consent forms were signed at 6:06 p.m. Lastly, no evidence was presented to support a claim that the defendants were especially vulnerable, or were intimidated or coerced into signing the consent forms. Given the lack of any evidence to undercut the voluntariness of the written consent from each defendant, this Court is satisfied that the defendants' consent was voluntarily given.

IV. Defendant Bailey's Statements

Defendant Bailey also moved to suppress statements he made to police officers while they were searching his apartment. The Court explained in open court its reasons for finding merit to that motion. Specifically, a legitimate doubt exists as to whether and how the defendant was given his Miranda warnings.

The only evidence of the warnings was Officer Miller's testimony that he read the defendant his warnings from a card, Government Exhibit 1.  He was not asked, and did not testify, as to whether he determined that the defendant understood these rights or whether he wanted to speak to a lawyer.  Although the Manassas City Police have forms on which to memorialize a defendant's waiver of his Miranda rights, Miller did not have such forms with him and none was signed by the defendant.  Lastly, in both of his written reports of the search and arrest, Miller wrote that the defendants had signed consent to search forms but he omitted any reference to whether he had Mirandized defendant Bailey.  Defense counsel correctly argues that failure to include in an official report such an important act as Mirandizing a defendant strongly suggests that the Mirandizing did not happen.  The failure to memorialize the giving of the Miranda warning, the lack of a written waiver of rights, and the failure of the government to provide any evidence that defendant Bailey understood his rights and voluntarily waived them leads the Court to grant Bailey's motion to suppress.

V. Conclusion

    For the foregoing reasons, the defendants' Motions to Suppress the results of the searches will be denied.  Defendant Bailey's Motion to Suppress will be granted with respect to the statements he made to police officers after his arrest, which the

Court deems to be when he was first handcuffed.  An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

Entered this 28th day of October, 2005.

                                          /s/
                                 Leonie M. Brinkema
                                 United States District Judge

Alexandria, Virginia